```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                     COLUMBUS DIVISION
```

STEPHEN MICHAEL GRAUPNER           *

        Appellant,              *

vs.                                *
                                  CASE NO. 4:07-CV-37 (CDL)
NUVELL CREDIT CORPORATION          *

        Appellee.               *

## O R D E R

Stephen Michael Graupner ("Debtor") appeals the bankruptcy court's ruling that Nuvell Credit Corporation ("Creditor") possessed a purchase-money security interest in Debtor's pick-up truck, and thus under 11 U.S.C. § 1325(a)(*), the secured debt would be valued at the full value of the debt and would not be reduced to the reasonable value of the collateral pursuant to 11 U.S.C. § 506. For the following reasons, this Court affirms the bankruptcy court.

## FACTUAL BACKGROUND

The facts giving rise to this appeal are undisputed. On June 23, 2005, the Debtor purchased a 2005 Chevrolet Silverado pick-up truck from a motor vehicle dealer for his personal use. The dealer agreed to finance the purchase pursuant to a retail installment contract. The seller retained a security interest in the vehicle to secure the unpaid balance of the total sales price.

As part of the transaction, the Debtor traded in a 2002 Chevrolet Silverado. That vehicle had a "negative equity" with the Debtor owing $6,347.50 more on the vehicle than its market value. The "total sales price" included this negative equity on the trade-in which had the effect of increasing the purchase price. The total amount financed

was $36,384.62. The dealer assigned the retail installment contract to the Creditor which perfected its security interest by having its lien noted on the title to the pick-up truck.

On April 19, 2006, the Debtor filed for Chapter 13 bankruptcy protection. The Creditor filed its secured proof of claim showing an amount due on the contract of $33,670.31. The Debtor listed the pick-up truck on his schedules as having a value of $23,375.00. The Debtor proposed a Chapter 13 plan that sought to modify Creditor's secured claim of $33,670.31 by bifurcating it into secured and unsecured portions based upon the retail value of the vehicle. The Creditor objected to the confirmation of the proposed plan, contending that its full secured claim could not be modified through a "cramdown" because it was excepted from such modification under 11 U.S.C. § 1325(a)(*).[1]

The bankruptcy court issued an order on December 21, 2006 ruling that the Creditor had a purchase money security interest for the full value of its debt and that the debt could not be modified through a "cramdown." The Debtor filed a motion for reconsideration which the bankruptcy court denied. Debtor appeals these rulings of the bankruptcy court.

---

[1] "Cramdown" is a shorthand description of the Bankruptcy Code's authorization for the reduction of a secured debt to the amount of the creditor's interest in the bankruptcy estate's interest in the secured property. In other words, the secured obligation exists to the extent of the reasonable value of the secured property and thus is reduced from the full amount of the debt. 11 U.S.C. § 506. The "cramdown" provisions of the Bankruptcy Code do not apply if the creditor has a "purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within 910-day[s] preceding the filing of the bankruptcy petition, and the collateral . . . consists of a motor vehicle . . . for the personal use of the debtor. 11 U.S.C. § 1325(a)(*).

2

DISCUSSION

The issue presented by this appeal is whether the "cramdown" provisions of § 506 of the Bankruptcy Code apply under the facts of this case. The resolution of this issue depends solely upon whether the Creditor obtained a purchase-money security interest as contemplated by § 1325(a)(*) of the Bankruptcy Code when the total amount financed as part of the Debtor's purchase of his motor vehicle included negative equity. This issue presents a question of law and is reviewed *de novo*. *Swinney v. Turner,* 309 B.R. 638, 639 (M.D. Ga. 2004).

The 2005 Bankruptcy Abuse Prevention and Consumer Protection Act included a new unnumbered paragraph in § 1325 designated as § 1325(a)(*). That paragraph provides:

> "For purposes of paragraph (5), section 506 [the "cramdown" provisions] shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt is incurred within the 910-day[s] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing."

11 U.S.C. § 1325(a)(*).

It is undisputed that the debt in this case was incurred within the 910 days preceding the filing of Debtor's petition for bankruptcy protection and that the collateral for the debt was a motor vehicle acquired for personal use. Therefore, if the Creditor possessed a purchase money security interest securing the debt, the cramdown provisions of § 506 do not apply.

3

Under Georgia law, "[a] security interest in goods is a purchase money security interest . . . [t]o the extent that the goods are purchase money collateral with respect to that security interest." O.C.G.A. § 11-9-103(b)(1). "'Purchase money collateral' means goods . . . that secure[] a purchase money obligation incurred with respect to that collateral." O.C.G.A. § 11-9-103(a)(1). "'Purchase money obligation' means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used." O.C.G.A. § 11-9-103(a)(2).

In this case, the Creditor contends that the "price of the collateral" includes the negative equity that was included in the total amount financed. Debtor responds that the "price of collateral" should include only the purchase price of the vehicle, excluding the negative equity, and since the amount financed was not limited to this amount, the Creditor did not obtain a purchase money security interest for the full value of the debt.

The Court finds that under the facts in this case the price of the collateral included the negative equity. The trade-in of the vehicle was an integral part of the sales transaction. The value of that trade-in along with its accompanying debt affected the ultimate price that was paid for the new pick-up truck. The negative equity is inextricably intertwined with the sales transaction and the financing of the purchase. This close nexus between the negative equity and this package transaction supports the conclusion that the negative equity must be considered as part of the price of the

4

collateral.[2]  Accordingly, the Court finds that the Creditor has a purchase money security interest for the full amount of its debt. Thus, § 506 shall not apply to modify the amount of the secured obligation.

CONCLUSION

For the foregoing reasons, the bankruptcy court is affirmed.

IT IS SO ORDERED this 26th day of June, 2007.

S/Clay D. Land<br>
CLAY D. LAND<br>
UNITED STATES DISTRICT JUDGE

---

[2] The Court's conclusion is supported by other statutory authority defining "sales price" in consumer transactions. *See, e.g.,* Federal Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, as implemented by Regulation Z, 12 CFR Pt. 226 (negative equity treated as part of total sales price); Georgia Motor Vehicle Sales Finance Act, O.C.G.A. § 10-1-31(a)(1) ("cash sales price" includes negative equity). The official comments of the drafters of the Uniform Commercial Code also support the conclusion that the price of collateral includes negative equity. *See* U.C.C. § 9-103 cmt. 3 (Price of collateral includes "obligations for expenses incurred in connection with acquiring rights in the collateral.").